City of South Bend v. Hardy.

Filed Dec. 9, 1884.

---

No. 10,771.

## CITY OF SOUTH BEND v. HARDY.

WITNESS.—*Cross-Examination:—Credibility.*—A plaintiff having testified in his own behalf in a suit against a city for personal injury resulting from a defective sidewalk, the defence proposed by his cross-examination to show that some three years before he had combined with others to defraud an insurance company, which had taken a risk upon his life.

City of South Bend *v.* Hardy.

*Held,* that such cross-examination might, in the discretion of the court trying the cause, be either refused or permitted, without error, the witness not claiming his privilege.

SAME.—For a discussion generally of the right to cross-examine as to matters which tend to disgrace a witness, and cases reviewed, see opinion.

INSTRUCTIONS.—An instruction in general terms, which is correct, can not be objected to upon the ground that it should have been more specific.

From the St. Joseph Circuit Court.

*J. Hagerty* and *L. Hubbard,* for appellant.

*W. G. George* and *A. Anderson,* for appellee.

BLACK, C.—The appellant was sued by the appellee to recover damages for his personal injury, caused through the negligence of the appellant, by a defect in a sidewalk, over which the appellee was passing at night. There was an answer of general denial.

Two questions embraced in a motion for a new trial made by the appellant, the overruling of which is assigned as error, are presented by counsel for our consideration. The first relates to the exclusion of certain evidence; the second, to the giving of the eleventh instruction to the jury.

The plaintiff testified as a witness in his own behalf. On cross-examination he testified that he was absent from South Bend a short time; that he was in Michigan and Wisconsin; in Wisconsin most of the time, in Michigan four days; that he was in Cadillac, Michigan; that he did not conspire with others to defraud a life insurance company during his absence; that he did have life insurance before he went to Michigan.

Counsel for the appellant then asked the witness, "What amount of life insurance did you have at the time you were absent from the State?" Upon objection being made by the appellee to this question, counsel for the appellant stated to the court "that the defendant proposed and offered to prove, by such cross-examination, circumstances tending to show that said plaintiff had had a large amount of insurance on his life; that he secretly left the State and concealed himself; that during his absence his friends attempted to collect his

City of South Bend v. Hardy.

life insurance, alleging that he was dead; and facts tending to show plaintiff's knowledge of such concerted attempt to defraud the life insurance company."

The court sustained the objection and refused to require the witness to answer the question.

Counsel for appellant then asked the witness, " Do you not know that during your absence, it was alleged by your acquaintances that you were drowned at Cadillac, Michigan?" To which the witness answered, " Yes." Counsel for appellant then asked the witness, " Did you not have your life insured before you left South Bend for Michigan and Wisconsin?" Counsel for the appellee objected to the question. Counsel for the appellant then stated: " We expect to show that the plaintiff had insured his life for $5,000 before going away; that he concealed his whereabouts; that, with his knowledge, and to defraud the life insurance company, it was reported by his friends that he had been drowned at Cadillac, Michigan; that he went to Wisconsin to conceal himself to assist in the attempted fraud." The court ruled that the question should not be put or answered.

The date of the trial was January 9th, 1883. There was evidence showing that the appellee's absence from South Bend, when he visited Michigan and Wisconsin, was an absence for about three weeks in June or July, 1880 or 1881.

The particular facts which it was sought by these questions to elicit, and the professed purpose of the cross-examination, were collateral and irrelevant to the principal matter in dispute. Whatever the answers of the witness might have been, they would not have helped to prove or disprove the alleged cause of action. The evidence sought might have tended to impair the credibility of the witness, and to do this was the purpose of the questioner.

In weighing the testimony of a witness, the jury may consider his interest, but we see no reason why a party should otherwise stand upon a different footing from other witnesses as to the modes of attacking his credibility.

City of South Bend v. Hardy.

The limits of cross-examination, for the purpose of impeaching the credit of witnesses, have not been in all respects clearly defined and uniformly established. Much contrariety is attributable to the great latitude allowable in this regard, in some instances, in the exercise of discretion by the trial court. A witness can not, on cross-examination, be interrogated as to a particular fact which is collateral and irrelevant, merely for the purpose of contradicting him by other evidence, and of thereby discrediting his testimony. If such a question is put to a witness and answered, his answer is conclusive, and he can not be contradicted. 1 Greenl. Ev., sections 448, 449.

In *Bersch* v. *State*, 13 Ind. 434, on the trial of an indictment against Bersch for passing counterfeit money, the principal witness for the prosecution was one Deckhard. On cross-examination, the defendant proposed to ask this witness if he had not passed a counterfeit bill as a genuine one in Louisville, and what he had sworn about it on a former occasion. The trial court held the question inadmissible. On appeal, this court said that if the defendant's object was to lay the foundation for the contradiction of the witness, such contradiction would be a violation of the rule that it must be as to matter relevant to the issue, and that if the defendant relied upon the answer to impeach the character of the witness, he was attempting to violate the rule that evidence for that purpose should not go to particular acts, but to general character. But it was said that perhaps the court might, in its discretion, have let the question go to the witness under proper advice, and that there was no error in the ruling.

In an action by a father for the seduction of his daughter, her character for chastity is involved in the question of damages, and proof of her particular acts of sexual immorality has been held admissible.

It has been held by this court that in such a case the principal female witness could not, over objections made by coun-

City of South Bend *v.* Hardy.

sel, be asked, on cross-examination, whether she had not previously been criminal with other men.  It was said that in her character as a witness she stands as any other witness in the case (*Shattuck* v. *Myers*, 13 Ind. 46), and that in that character she may be impeached only "in the usual mode, through general questions." *Long* v. *Morrison*, 14 Ind. 595.

In *Wilson* v. *State*, 16 Ind. 392, which was a prosecution for rape, in speaking of a proposal of the defendant to prove that the prosecutrix was a keeper of a house of prostitution, and that she had with knowledge received a portion of the price of illicit intercourse of a certain man with another woman kept in said house, the proposition being to make the proof by the evidence of another witness, it was said that the evidence could only be offered to show that there was not the utmost reluctance and resistance, and that "The evidence of a particular act of immorality is not admissible to impeach a witness, or affect his general character," and *Shattuck* v. *Myers, supra,* and *Long* v. *Morrison, supra,* were cited.

In *Shattuck* v. *Myers, supra,* the question by which it was sought to elicit evidence of particular immoral acts was asked on cross-examination of the principal female witness in an action for seduction, and the evidence sought related to previous acts of criminal sexual intercourse of the witness with other men than the defendant.  In *Long* v. *Morrison, supra,* it was not stated how the attempt to prove the particular immoral act of the witness was made, though it would seem, from the language used, to have been made by questioning another witness, and the nature of the particular act of immorality is not stated.

In *Smith* v. *Yaryan,* 69 Ind. 445 (35 Am. R. 232), an action by a female for her own seduction, it was held that, as in a bastardy case it is competent to ask the prosecuting witness, on cross-examination, whether she had had sexual intercourse with any person other than the defendant about the time the child was begotten, so, where a child was born as the result of the seduction, as this fact would be a proper element to be

considered in assessing the damages for the seduction, the question whether the defendant was the father of the child could be tested in the same manner, by cross-examination of the plaintiff, over the objection of her counsel.

It seems that it would be sufficient reason for sustaining an objection to such a question as was proposed in *Shattuck* v. *Myers, supra, if it were irrelevant to the issue,* that though the answer thereto might disgrace the witness in another respect, it would not affect the credibility of the witness.   1 Greenl. Ev., sec. 458.   The relations between the sexes, it is sometimes said, have no direct bearing on the probability of the witness telling the truth.   Whart. Ev., section 542, n. 2.

When the character for chastity of a female is involved in the issue, as in an action for seduction, it appears to us that, under settled principles of evidence, she may be required to testify, on cross-examination, to any particular acts showing her previous want of chastity, if they would not tend to criminate her, but would only disgrace her.   Where male witnesses may be required to disgrace themselves by testifying in such cases to their acts of sexual intercourse, not the subject of the action, with the female seduced, no reason can be seen why she should be exempted.   No distinction, on principle, can be seen between the case of such a witness, in an action for seduction, and that of the prosecutrix in an indictment for rape, character for chastity being involved in the former action in the question of damages, and in the latter action in the question of the probability of assent.   It has sometimes been held in both these cases that it was not proper to put such questions to the principal female witness, and the contrary has been held in both cases.   In *Shattuck* v. *Myers, supra,* a New York case was referred to, in which it was held proper to ask such questions of the prosecutrix on the trial of an indictment for rape, and it was attempted in *Shattuck* v. *Myers, supra,* to distinguish such a case from an action for seduction.

Such cross-examination of the principal female witness in

City of South Bend *v.* Hardy.

either of such cases would go to the matter in issue, and if she denied the immoral act, she might be contradicted by other witnesses; and it is not proper to treat such cross-examination solely as an attempt to impeach the witness.

"In modern times, it has frequently been held, that in actions for seduction, and on indictments for rape, the principal female witness might be cross-examined, with the view of showing that she had previously been guilty of incontinence with the defendant, or even with other men, or with some particular person named; and, when she has denied the facts imputed, witnesses have been called for the purposes of contradiction." 2 Greenl. Ev., section 577, n. *a.*

Of course, if any question put to a witness would elicit an answer which would tend, by reason of any statute, to expose him to a criminal prosecution, the witness may decline to answer. *French* v. *Venneman*, 14 Ind. 282.

Any inference that might be drawn from *Bersch* v. *State, supra, Shattuck* v. *Myers, supra, Long* v. *Morrison, supra,* and *Wilson* v. *State, supra,* that the credibility of a witness can never be attacked by evidence of particular acts of immorality elicited by cross-examination of such witness, would not be strictly correct.

If the answer to a question propounded to a witness would furnish a link in the chain of evidence which would convict him of a crime, and if he claim his privilege, he is not bound to answer, whether his answer would be material and relevant, or collateral and irrelevant, to the issue. But where the answer would thus tend to expose the witness to a criminal charge, if it be material and relevant to the issue, the privilege belongs to the witness alone, and must be claimed by him; the objection can not be interposed by a party, but the witness, advised of his privilege, will be permitted to answer if he choose to do so.

If the answer would tend merely to degrade the character

of the witness, and if it be relevant and material to the issue, whether it would go to his credibility or not, he may not decline to answer, and a party can not object.

If, however, the answer to a question on cross-examination would be collateral and irrelevant, and would merely disgrace the witness, but would not affect his credibility, the witness may decline to answer; the court should in all cases sustain an objection made by counsel, and the court may, without objection made, interpose and protect the witness from the impertinence.    1 Greenl. Ev., section 458.

If the cross-examination tends merely to disgrace the witness, but relates to a collateral and independent fact, and goes clearly to the credit of the witness, whether in such case he has the privilege to decline or not, the matter so far rests in the discretion of the trial court that in the absence of a claim of privilege, if the question relate to a matter of recent date and would materially assist the jury or the court in forming an opinion as to his credibility, the court will usually require an answer, over the objection of counsel, but may sustain an objection.

When the answer would tend to criminate the witness, but would be collateral and irrelevant to the issue, and yet would affect his credibility, if he do not claim his privilege, no distinction, so far as the discretion of the court and the right of a party to call for its exercise by an objection are concerned, can be perceived between such a case and one differing from it only in that the answer would merely disgrace the witness. In short, where the question relates to a particular act which is collateral and irrelevant to the issue, it is proper for a party to object, and it is within the sound discretion of the court, where the witness does not exercise a privilege to decline, to permit an answer, if, by affecting the credibility of the witness, it will subserve justice, or to sustain the objection, if such purpose will not be promoted by the answer; and if the answer would not affect the credibility of the witness, the court should sustain the objection, and has no discretion to

admit the evidence. See *Great W. Turnpike Co.* v. *Loomis,* 32 N. Y. 127; *Shepard* v. *Parker,* 36 N. Y. 517.

Section 2138, R. S. 1881, provides: " Whoever presents or causes to be presented any false and fraudulent claim, or any proof in support of any such claim, upon any contract of insurance for the payment of any loss by fire or death; or who shall prepare, make, or subscribe any account, certificate, survey, affidavit, proof of loss, or other book, paper, or writing, with intent to present or use the same, or allow it to be presented or used, in support of any such claim,—shall, upon conviction thereof, be imprisoned in the State prison," etc. And the next section provides: "Any person or persons who shall unite or combine with any other person or persons, for the purpose of committing a felony; or any person or persons who shall knowingly unite with any other person or persons, or body or association or combination of persons, whose object is the commission of a felony or felonies,—shall, upon conviction thereof, be fined in any sum not more than five thousand dollars nor less than twenty-five dollars, and imprisoned in the State prison," etc.

The evidence, which it was the professed purpose of the cross-examination to elicit, not only might have disgraced the witness, but also might have constituted a link or links in a chain of evidence which would have fixed upon him a criminal charge. The witness might have declined on the ground of privilege. The evidence was collateral and irrelevant to the issue. In the absence of a claim of privilege, though the answer sought would have affected the credit of the witness, it was within the discretion of the trial court to sustain the objection of counsel; and if the exercise of such discretion be, in any case, subject to review upon appeal, we are satisfied that there was no abuse of discretion in this case.

The eleventh instruction to the jury was as follows:

" If you find that the plaintiff knew of this defect, if any, that is a circumstance which you should consider, together with all the other circumstances of the case, in determining

the question whether with such knowledge the plaintiff exercised ordinary care in proceeding on the walk known to him to be dangerous, or in proceeding used ordinary care to avoid injury."

The injury to the appellee was caused by his stepping at night into a hole in the north side of a board sidewalk on which he was passing, a plank being broken off, leaving a vacancy about three feet long, six and one-half inches wide, and about six inches deep at its south side, and sloping toward the north to a depth of about sixteen or nineteen inches.

If it was consistent with reasonable care for the appellee to proceed upon the sidewalk, knowing the defect therein, his doing so could not be said to be contributory negligence. Whether in such a case it was consistent with reasonable care for the person injured to proceed, as well as whether due care to avoid injury was used in the act of passing, is generally a question for the jury. Certainly it was so in this case.

If the appellant desired that the subject of the existence of a safe way of passage, and the appellee's failure to pursue it, should be more specifically suggested for the consideration of the jury, he should have requested the giving of such a specific instruction, not in conflict with that given. It is well settled that the instruction given was not erroneous. *City of Huntington* v. *Breen*, 77 Ind. 29; *Murphy* v. *City of Indianapolis*, 83 Ind. 76; *Wilson* v. *Trafalgar, etc., G. R. Co.*, 83 Ind. 326; *Henry County Turnpike Co.* v. *Jackson*, 86 Ind. 111; S. C., 44 Am. R. 274.

The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at the costs of the appellant.

Filed Dec. 16, 1884.